Opinion delivered March 8, 1884.

---

[No. 1649.]

## James Love *v*. The State.

1. THEFT—EVIDENCE—CONSENT.—Want of consent of the owner to the taking of the stolen property is an element of theft which can be proved by circumstantial evidence only after it has been satisfactorily shown that the best evidence—that of the owner himself—is inaccessible by the use of ordinary diligence, or that such owner is beyond the reach of legal process.
2. SAME—MARKS AND BRANDS.—The rule of evidence that no brands except such as are recorded shall be received as evidence of ownership does not apply to marks.
3. SAME.—A mark may be proved without showing it to have been recorded, except when, in civil cases, a dispute arises as to an ear-mark.

APPEAL from the District Court of Gonzales. Tried below before the Hon. E. Lewis.

The indictment charged the theft of a yearling, the property of Richard Dismukes, in Gonzales county, on the first day of

August, 1876. The trial resulted in conviction, and the punishment assessed was a term of two years in the penitentiary.

N. T. Davis was the first witness for the State. He testified that in 1876 the defendant lived with his step-father, near witness's place in Gonzales county. Richard Dismukes at that time was the owner of a cow branded with a diamond O. She ran near the places of witness and defendant's step-father. She had a calf which at the time of the theft was nearly or quite a year old. It was a red calf with a somewhat white flank and belly. Some ten days before the calf was missing witness saw it with its mother. At that time it was branded with a script T and a reversed S. Witness was authorized to brand the calf in the mother's brand for the owner. He, witness, authorized no one to take the calf nor to brand it in the letters indicated. The brand, TS, was fresh and bleeding when witness saw it, and had, about ten days before, been recorded in defendant's name. The calf was taken about August 1, 1876, from its range in Gonzales county.

Within a day or two after the calf was missing from the range, the witness found the hide in Ed. Scheskey's butcher pen. Low and McBride were with witness when the hide was found. Scheskey lived near Gonzales, and about four miles from the animal's range. R. A. Houston claimed the script T and proper S brand; Dismukes the diamond O brand. Witness claimed the calf for Dismukes, on account of its mother's brand. After the close of the testimony, the witness, on recall, said that, with reference to the brand on the calf, he was mistaken; the brand was a script T and a proper instead of a reversed S.

D. Low was the next witness for the State, and testified, in substance, that the calf was the calf of the diamond O cow; that it was missing from the range about August 1, 1876; that he was with Davis when he found the hide at Scheskey's; that the hide was freshly branded as described by Davis; that defendant, then seventeen or eighteen years old, disappeared from the country about the time the animal was missed.

Walter Kendall, for the State, testified, in substance, that some time in August, 1876, when on his return home from Gonzales, he met the defendant, who had his, the witness's, dog with him. He asked defendant what he was doing with the dog. Defendant replied that he was taking an unmanagable calf to Scheskey's butcher shop, and procured the dog to assist him. Witness then asked him where the calf was, and, pointing back on

the road, he answered that it was near there, tied. Witness rode back with him, and, before he had reached the animal, recognized it, and told defendant that that calf was not his, defendant's, but was the calf of the diamond O cow, and that unless he wanted to get into trouble, he had best turn it loose. Defendant replied that the calf was his. Witness retorted that the brand was fresh, and had been picked on. He replied: "No, it is an old brand, and was put on with an iron." Witness had seen this calf (which he knew well) about two weeks previously. It was then neither marked nor branded. This was on the public road.

Ed. Scheskey testified, for the State, that in August, 1876, he purchased from the defendant such a calf as was described by the witnesses Davis and Low. Davis and Low came to the witness's butcher pen on the day after it was butchered and examined the hide.

Robert Nations testified, for the State, that Richard Dismukes is a half brother of his. Dismukes lives in Toyah, Presidio county, Texas, from whence it required about three days for a letter to reach Gonzales. He had not seen Dismukes in Gonzales since the last term of court.

County attorney Atkinson testified, for the State, that on or about October 20, 1883, he was informed that Richard Dismukes was in Gonzales, and he had a subpœna issued for him, which was not served because Dismukes left town. Dismukes had three brothers in Gonzales, of none of whom had he asked where Dismukes lived. He had had no other diligence used to secure the attendance of Dismukes than to cause the issuance of several subpœnas.

R. A. Houston, for the defense, testified that as the agent of one Taylor he, some three, four or five years ago, sold the defendant a bunch of cattle branded script TS. They ran on Sandy fork and Denton creek, just beyond where the State's witness lived.

Jeff. Love, a brother of the defendant, testified in his behalf that the calf in question was the calf of a cow in the script TS brand, which belonged to the defendant, having been presented to him by his step-father. It was a red or brown yearling, branded TS. Defendant so branded it. Witness and his brother lived on Denton creek. This was a steer yearling. The brand was an old one. Witness assisted the defendant to take it to the butcher pen for sale. They did not have to tie it. They did not

meet Kendall on the road. This calf was the only one defend-
ant ever sold Scheskey that witness knew anything about.

The motion for new trial, which raised the questions involved
in the opinion, was overruled.

*Fly & Davidson*, for the appellant.

*J. H. Burts*, Assistant Attorney General, for the State.

WHITE, PRESIDING JUDGE. Ownership of the animal charged
to have been stolen was by the indictment alleged to be in Rich-
ard Dismukes. Want of consent to the taking is attempted to
be proven by a witness who claims to have been an agent of
Dismukes in the branding of this animal, and whose agency was
derived not from Dismukes but from one Hodges, who told wit-
ness that Dismukes wanted him, witness, to brand the calf. No
sufficient diligence is shown in the efforts of the prosecution to
have Dismukes present to testify in person with regard to the
question of consent, and the evidence shows that Dismukes is
within the reach of process of the court, and that his where-
abouts could easily have been ascertained. Nor does the record
contain any facts pertinently establishing want of consent on
the part of Dismukes. The best evidence of want of consent is
the testimony of the owner, and circumstantial will only be
permitted where it is shown that the owner is inaccessible by
the use of ordinary diligence, or beyond the reach of legal pro-
cess.

On the trial the prosecution introduced the record of the mark
and brand of Dismukes. It is objected that there is a material
difference in the record mark and that actually claimed by Dis-
mukes. This is immaterial unless the mark set out in the in-
dictment had been variant from the one proven. No mark at
all is alleged in the indictment. Whilst the law is that "no
brands except such as are recorded shall be recognized in law as
any evidence of ownership" (Rev. Stats., Art. 4561), this rule is
not applicable to marks. (*Johnson* v. *The State*, 1 Texas Ct.
App., 333.) A mark may be proven without showing it to have
been recorded, and it is only where a dispute arises about an ear-
mark in a civil case that a reference to the books of marks and
brands is decisive of the dispute. (Rev. Stats., Art. 4559.)

It is not deemed necessary or profitable to discuss the several
other errors assigned by the appellant, as they are not likely to

arise on another tri-l. Because the record fails to show want of consent of the owner, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Opinion delivered March 8, 1884.